EL PASO BRIDGE & IRON CO. v. DUNHAM et al.

(Court of Civil Appeals of Texas. Texarkana. Jan. 18, 1913. Rehearing Denied Jan. 23, 1913.)

CONTRACTS (§ 353*)—CONSTRUCTION—"ECONOMY"—"PARSIMONY."

Where defendant agreed that plaintiff should complete certain bridge piers and charge the expense to him, and that plaintiff should exercise ordinary care and reasonable skill, an instruction, in an action by plaintiff for such expenses, that the plaintiff should exercise "reasonable economy" was proper and not misleading, since, if the plaintiff was acting in good faith, it was its duty to exercise such economy, though it did not expressly agree to do so; the word "economy" meaning "frugality" or "prudent economy" and not "parsimony."

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1829–1844; Dec. Dig. § 353.*]

Appeal from District Court, Tarrant County; R. H. Buck, Judge.

Action by the El Paso Bridge & Iron Company against R. M. Dunham and another. Judgment for defendants, and plaintiff appeals. Affirmed.

V. K. Wedgworth and Sidney L. Samuels, both of Ft. Worth, for appellant. Spoonts, Thompson & Barwise and Harris, Harris & Young, all of Ft. Worth, for appellees.

WILLSON, C. J. May 6, 1909, appellant contracted with Hood county to construct a steel bridge across the Brazos river. The bridge was to be completed and ready for inspection on or before November 6, 1909, "allowing," it was recited in the contract, "a reasonable amount of time in case of unavoidable delays in shipping by reason of high water, accidents in construction, strikes, or any other cause beyond the control" of appellant. June 24, 1909, appellee Dunham contracted with appellant "to furnish all labor, tools, materials and appliances, and to erect and construct complete, ready for the superstructure, two concrete piers, one concrete approach pedestal, all in accordance with plans and specifications for the bridge, made a part of the contract, and to have same ready for inspection on or before September 1, 1909, "allowing a reasonable amount of time in case of unavoidable delays due to high water, accidents in construction, or any other cause beyond the reasonable control" of Dunham. To secure the performance of his undertaking, Dunham furnished appellant a bond in the sum of $2,500, executed by himself, as principal, and the Fidelity & De-

posit Company of Maryland, as surety. March 9, 1910, the work Dunham had undertaken to do being then incomplete, he and appellant, the Fidelity & Deposit Company of Maryland consenting, entered into a contract whereby appellant undertook to take charge of and complete the work at Dunham's expense. In the contract the parties stipulated that appellant should "forthwith select and place a foreman on said work at the ultimate expense and to the charge of Dunham, which said foreman shall, with diligence, proceed with the construction and completion of said work, and said foreman shall have charge, control and supervision of said work, and of all employment thereon, with full authority to employ and discharge all labor thereon, and with full authority to purchase all material used thereon, and furnish any tools, or appliances, and incur all expenses necessary and proper, the said El Paso Bridge & Iron Company obligating itself that the said work shall be conducted by the said foreman so selected with ordinary care and reasonable' skill, and in the way and manner herein specified. * * * The purpose of this agreement is to transfer to said El Paso Bridge & Iron Company full authority and control over said work and its completion, but to be done at the cost and expense of the said Dunham. * * * It is not the intention, however, that said El Paso Bridge & Iron Company shall incur any additional expense or pay any additional amount over and above that specified in said contract dated June 24, 1909, and if it should sustain any additional loss or pay any additional amounts, other than those specified in said contract, said Dunham (and said Fidelity & Deposit Company of Maryland to the amount of its bond) shall be liable to said' El Paso Bridge & Iron Company therefor, it being intended only to vary said contract dated June 24, 1909, to the extent of authorizing and empowering the said El Paso Bridge & Iron Company to take charge of and complete said work at the expense of said Dunham in the way and manner as above set forth herein." The work was completed by appellant under this contract at an expense, it claimed, of $3,461.15 in excess of the sum it had agreed to pay Dunham for same. It brought this suit to recover that sum of Dunham and also to recover $2,500 thereof, the amount of the bond, of the Fidelity & Deposit Company of Maryland. Dunham claimed that the foreman appellant selected to take charge of the work purchased materials therefor, employed labor thereon, and incurred expenses incident thereto "that were not necessary, and that were improper, and did not prosecute said work with ordinary care, but with negligence, and not with reasonable skill, but wholly without skill." He further claimed that not only was he not liable to appellant as asserted by it, but that appellant justly was due him the sum of $1,500 on account of said contracts, and for this sum he asked judgment against it. The finding by the jury was against appellant on its suit against Dunham and the Fidelity & Deposit Company of Maryland, and in favor of Dunham for the sum of $1,411.25 and interest thereon from November 1, 1910, on his plea in reconvention against it. In accordance with the verdict, judgment was rendered that appellant take nothing by its suit, and that Dunham recover of it the sum of $1,510.03 and costs.

The sufficiency of the evidence to support the judgment rendered is not questioned by appellant, and we find as facts shown by the record that Dunham was not indebted to appellant in any sum as claimed by it, and that it was indebted to Dunham in the sum found by the jury.

In his charge the court told the jury "it was the duty of the plaintiff, in the completion of the construction of the substructure of the bridge described in the plaintiff's petition, to use ordinary care to the end that said work should be prosecuted and conducted with reasonable skill and dispatch, and that reasonable economy should be exercised as to the employment of labor, the purchase of material, and the incurring of other expenses reasonably and properly incident thereto." Complaint is made because of the use of the word "economy" in the instruction. That word not' having been used in the contract, it is insisted that the use of it in the charge "was confusing and misleading, in that the term is synonymous with 'frugality' or 'parsimony,' and the jury were thus allowed to speculate as to the meaning of the term;" and it is further insisted that the effect of the use of the word was to so construe the contract as to make it more onerous on appellant than its terms warranted. That appellant did not expressly agree it would use "reasonable economy" in the performance of the work, we think is of no importance. It was bound, nevertheless, to exercise such economy, with reference, of course, as the jury must have understood the court to have meant, to the circumstances of the case as shown by the testimony. Good faith on its part demanded that much of it, and such an undertaking on its part would be implied, as arising from the nature and purpose of the contract. Assuming that the parties in entering into the agreement were acting in good faith, there can be no doubt both contemplated that appellant would exercise "reasonable economy" in making the purchases and doing the work necessary to be done to comply with Dunham's undertaking with reference to the bridge. The effect, therefore, of the use by the court of the word complained of was to tell the jury the contract meant what the parties, when they entered into it, understood it to mean. To so instruct them was not error. 2 Page on Contracts, §§ 1118, 1123. That the word

"economy" is synonymous with the word "frugality," meaning "prudent economy, that careful management of anything valuable which expends nothing unnecessarily and applies what is used to a profitable purpose," and with the word "parsimony," meaning "closeness or sparingness in the expenditure of money or means," could not have confused or misled the jury. Had the court, instead of using the word "economy," used the words qualified, as that word was in the charge, defining, as indicated, the words "frugality" and "parsimony," the instruction would not have been erroneous. The word "parsimony," in its bad sense of "excessive economy, closeness," is not synonymous with "economy"— certainly not with that word qualified, as it was in the court's charge, by the word "reasonable"—and the jury could not have understood the court to have meant "parsimony" in that sense.

The judgment is affirmed.